WADE *versus* KILLOUGH.

1. The want of a plea or demurrer in a record, the import of which is therein shown, will. be supplied in this court, by intendment, wherever parties appear to have been in court, and a regular trial had—no exception to their absence being taken below.

2. Where a vendee of real estate executes a note in consideration of the purchase money, and receives a bond for title from the vendor, with possession, he cannot resist a recovery upon the note, on the ground of the want of title in the vendor; no fraud being imputed or rescission claimed; and no effort made to place the vendor in statu quo, by a return of the premises.

David Killough declared in debt, in Jefferson Circuit court against Reuben Wade, on a promissory note, payable 25th December, 1828. The defendant plead, first, the general issue; second, a special plea, averring that the said note had been given in consideration of real estate, and that said Killough possessed no title threto; insisting generally on a failure of consideration.

The record showed a judgment on demurrer to the second plea; and a subsequent judgment on the verdict of a jury, for the plaintiff, upon the defence of failure of consideration.

A bill of exceptions taken in the progress of the trial, disclosed, that the defendant, in defence to a recovery upon the note, produced evidence to shew that the said note had been executed in consideration of certain lands sold to the defendant by the plaintiff, and Allen and George Killough; that the latter had executed a bond, stipulating for titles to the lands so purchased, on or before the 25th day of December, 1828, and that certain of the lands were of the es-

tate of Isaac Killough, who, at the time of said sale, was of non age.

It was also in proof that the said plaintiff had tendered a deed to the defendant, which he had refused to accept; on the ground, chiefly, that it contained no sufficient relinquishment of the dower of the plaintiff's, and Isaac Killough's wives: and, further, that a suit on the bond for titles was, then pending.

It also appeared, in evidence, that the defendant had received possession of the land; and, had not been disturbed therein: also, that he had made no offer to relinquish possession, or cancel the contract of sale.

On this state of facts, the court was asked to, instruct the jury—

1st. That, if the plaintiff and his co-obligors, had not such title as they had agreed, at the time of the sale, to convey, the defendant was entitled to a verdict.

2d. That, if the plaintiff and David and Isaac Killough, had not such title as the defendant had agreed to purchase, at the time of suit brought, and could not make such title, the plaintiff could not recover.

3d. That, if the title tendered, was not that contracted to be furnished, the plaintiff could not recover.

4th. That, if the plaintiff, and his co-obligors, had not, at the time of trial, such title as they had agreed to convey, and the defendant to accept; the defendant must have a verdict.

The court below refused to give the jury these instructions, on the ground, that the defendant was bound, before he became entitled to his defence, to

place the plaintiff in *statu quo;* or shew, that it was not practicable for the vendors to effect the title.

All these matters were excepted to, and assigned for error, in this court.

*Shortridge* and *Peck*, for the plaintiff.
*Ellis, contra.*

SAFFOLD, J.—The assignments of error, may be embraced in two, as follow :

1st. That the court rendered judgment, for the plaintiff below, as on demurrer, when there was no demurrer filed.

2d. The court, (if one be intended,) erred, in overruling the demurrer, and, in refusing to charge the jury, as requested ; and, in deciding, that it was necessary, for the defendant below, to place the plaintiff in *statu quo*, before he could resist the payment of the note.

First. The plaintiff in error, relies on the decision of this court in the case of *Old* vs. *Seargent*,[a] in support of his first assignment.

[a] 1 Stew'rt. 37.

It is true, the court, there held, that a judgment for the plaintiff, as on demurrer to his declaration, when the record showed no demurrer, or other issue, was erroneous. Were we disposed to be governed by that decision, this case is slightly different from that, in as much as this decision was in overruling a plea, when the record contained another plea, on which the same defence could have been, and was attempted to be made. This circumstance precludes the idea, that the defendant below was injured, in his defence, by having his second plea overruled.— It also strengthens the presumption, that the plea

was treated, by the court, and both parties, as though the demurrer had regularly been filed—waiving the formality of doing so: or, that it was, in fact, filed, and has been misplaced. Had the fact been otherwise, the party aggrieved, had a right, and it may be presumed, would have exercised it, to insert this matter, with the other, in his bill of exceptions.

The rule of practice, by which we have professed to be governed for some years, has been, regardless of the former decisions, that, where the parties appear to have been present in court, and a regular trial has been had, except that a plea or demurrer is wanting, in the chain of pleading, (the import of which is sufficiently indicated by the record,) we will supply the defect, by intendment. We will presume, unless exception be taken, that the absent link has been misplaced; or, that the insertion of it was waived by the express or implied consent of the parties; and, that the trial was, as though it had been regularly filed.    Such was our course, in *Castleber-ry* vs. *Pierce.*[a]

*Vide* vol 2 Stewart & Porter.

Secondly. The second assignment depends on the question, whether, from the facts disclosed, either by the special plea, or by the evidence received on the trial, there was, in legal contemplation, a failure of the consideration of the note sued on? Or, was the execution of a good and sufficient title to the land in question, a condition precedent to the plaintiff's right of action?

No fraud is imputed to Killough, the plaintiff below, nor is it denied, but that he placed Wade in possession of the land according to the contract, and that he has enjoyed the peaceable possession ever since. It is also conceded, that the three Killoughs,

at the time of the contract, executed their joint and several bond, to Wade, binding themselves in an adequate penalty, to secure him a good and sufficient title to the premises, on or before a certain day : nor is there any objection, (if that could be material,) as to the ability of the obligors, to respond in damages, for any breach of the contract, on their part. It is not pretended, there has been any rescission of the contract, or offer of it made; but the contrary wish is avowed by the vendee.

But, it is contended, that, in as much as, by the terms of the contract, the purchase money was to have been paid, and the good and sufficient title made on the same day ; and, the title was not made then, or at any time, before the commencement of this suit ; on the contrary, that the obligors in the title bond, were incapable of making the titles, this action can not be sustained.—That there has been a failure of consideration of the note, by the failure to execute the deed, or offer to do so, which was a condition precedent.

The learned counsel, however, who were interested in maintaining this position, with all their research, have been unable to produce authority to sustain them, in applying the principle to a case like this, where a promissory note has been given for the purchase money, and a separate bond taken, to secure the title—especially where the vendee has received, and continued to enjoy the possession and profits of the premises.

If the contract can be viewed in the same light, as if a consolidated agreement had been entered into, by which one was to pay the price, and, on the same day, the other was bound to make the title, the au-

thorities cited by the counsel, would afford plausibility to the defence relied on, below, that performance was a condition precedent to the right of action, by either.

The case of *Jones* vs. *Gardner*,[a] was an agreement for a farm of land, sold at one thousand eight hundred and twenty dollars, payable by instalments.— The vendee was to have possession, (and, in fact, received the same,) before the maturity of the first instalment. Whenever he should receive a good and sufficient deed, and which was to be made on payment of the first instalment, he was to give a bond and mortgage, to secure the balance of the purchase money. The parties mutually bound themselves to each other, in the forfeiture of one thousand dollars, for the fulfilment of the contract.— The court held the covenants to be dependent, and that the delivery of the deed, and the payment of the money were concurrent acts, and that a compliance, on the part of the vendor, required, not only the execution of a proper deed from himself; but, that it must also contain a relinquishment of his wife's dower, according to the solemnities required by law.—That "the *title,* meant the legal estate in fee, free and clear of all valid claims, liens and incumbrances, whatever."

That case, however was materially different from the one under consideration, in this, that, at the time appointed for the payment of the first instalment, and the execution of the title, (and on the latter being done,) the state of the contract was to be varied, by the execution of the bond and mortgage, for the amount of the purchase money, in lieu of the mutual agreement, to forfeit to each other the sum men-

[a] 10 John. R 276

tioned.    But, the court ascribed to the stipulation, for a good and sufficient *title,* all the virtue contended for, on this occasion.

The distinction contended for between "a good and sufficient title," and "a good warrantee deed of conveyance," as well as the doctrine of dependent covenants, is also sustained by the case of *Parker* vs. *Parmele.*[a]    There, the plaintiff had covenanted, that on receiving from the defendant the consideration agreed on, for a lot of land, on a certain day, he would execute to the latter, his heirs and assigns, a good warrantee deed of conveyance of the land.    In an action for a breach of the covenant of the defendants, the court held that the covenants were dependant; that the words "a good warranted deed of conveyance," referred to the *instrument* of conveyance only, and not to the title; that a plea, therefore, that the plaintiff was not *siezed,* &c., or that he had no title, was not good, or sufficient, in avoidance of the action.    But a plea that the plaintiff did not, at the time agreed, nor at any time since, *tender* or offer to execute a deed of the kind contracted, was a good bar; for in such case the vendor cannot maintain an action for the purchase money, without having executed, or actually tendered a conveyance.    Many other cases might be noticed from the same State tending to the same result; as also the authority of Chancellor *Kent* in his character of commentator.— But it will be observed that few, if any of them, go to the extent, to treat a contract precisely such as this, supposing it to have been embraced in the same instrument, as one containing dependent covenants. They clearly indicated the intention of the parties that there mutual performance should be concurrent acts;

[a] 20 John. 130

the dependence or independence of covenants is to be collected in all cases from the evident sense and meaning of the parties.

One of the strongest cases cited by the plaintiff in error in his favor, is that of *Glazebrook* vs. *Woodraw.*[a] The plaintiff had covenanted, by articles of agreement under seal, to sell to the defendant a school house, &c. and to convey the same to him on or before the first of August, 1797, thereby transferring, not only his right, title and interest in the ground and building, but to surrender to him the pupils he then had, so far as in him lay, &c. and to deliver up the possession to him in June 1796; and *in consideration thereof*, the defendant covenanted to pay the plaintiff £120 on the said 1st of August, 1797.— The court (King's Bench) held that the covenant to convey, and that for the payment of the money, were dependent covenants and that the plaintiff could not maintain an action for the money; without averring that he had conveyed or tendered a conveyance. The Judges gave their opinions *seriatum. Kenyon,* Ch. J., in the course of his remarks, said, the general rule governing all such contracts is, " that every man's agreement is to be performed according to his intent, as far as that is to be collected from the particular instrument." *Grose,* J. says, "the plaintiff covenanted to convey, on or before the first of August, 1797, though the defendant was to be put in possession before; and the reason why the conveyance was not to be executed before is obvious, because that was the day on which the money was to be paid. Then, what is the true justice of this case and the evident meaning of the parties? It is plain by this, that the execution of the conveyance and the

payment of the money should be concurrent acts;
and even the payment of the interest was to be defer-
ed until the first of August, though it was to run
from the first of January preceding." Again, he
says, "the intention of the parties is, or is affirmed
to be, the governing principle of all the late deter-
minations." *Lawrence*, J., says, "whether one pro-
mise be the consideration of another, or whether the
performance and not the mere promise be the con-
sideration, must be gathered from, and depends en-
tirely upon, the words and nature of the agreement."
That "whatever the form of the words may be, if we
can collect from the face of the instrument that the
whole was to be performed by the plaintiff, before
the money was to be paid, nothing short of perform-
ance of the whole, can enable him to sustain his ac-
tion for the money." It will be observed that in the
case last referred to, neither the title *in fee*, nor a
general warrantee deed, was agreed to be made; that
the conveyance was to be in the nature of a quit
claim to the premises and an assignment of his good
will in the school. There was no security given by
the vendor for his compliance with the contract.—
Therefore, the nature of the contract was essentially
different from the one under consideration. (See [a]1 Saun. R. 320
note to the case of *Pordage* vs. *Cole*.[a])

The case of *Cassell* vs. *Cook*,[b] is, also, much relied [b]3 Searg.& Rawle 268
upon, by the plaintiff in error. That also was found-
ed upon articles of agreement, by which the plain-
tiff agreed to sell a tract of land, to the defendant,
who was to pay one third of the purchase money,
on a certain day, on which, also, a good title was to
be given to him, free from all incumbrances—and,
the remaining two-thirds, by instalments.

The defendant went into possession, but the first payment not being completed, on the day agreed on, no conveyance was made or tendered by the plaintiff. The defendant subsequetly made several payments, on account of the first instelment, which was never fully paid. Some time afterwards, the plaintiff tender ed a deed to the defendant, who refused to accept it, on the ground that it was too late. The court held, that, in an action for the purchase money, the defendant could not give in evidence, damages sustained by him, in consequence of the plaintiff's being unable or unwilling to give him a title at the day.

The opinion of the Supreme court, delivered by Justice *Duncan*, (*inter alia*,) says, "the contract is partly executed, and when a title can be made, it is mainly executed by the vendee, by possession delilivered, and uninterrupted enjoyment. "And, if it were altogether executory, the tender of the conveyance and payment of the money, were concomitant acts. There is no priority in the order of time.— The covenants are dependent.—The one is not obliged to convey, without payment of the purchase money : the other is not bound to pay, unless conveyance be made : and, before either could complain of damages, from non-performance by the other, he should put himself in an attitude to demand it."

In that case, the conveyance was adjudged to have been made in due time and form, except, that there was no sufficient relinquishment of the wife's claim of dower. The court further remarks—" the action is an action at law, for the recovery of the money due on the contract, by the medium of a penalty; and before the plaintiff could demand this money, sue for the penalty, (which was one hundred thou-

sand dollars,) or for the money due, in an action of covenant, it behoved him to tender a good and sufficient covenant. It is different from a debt on a bond, which is of itself, at law, a consideration; and where the obligor must go into equity, for relief, if the consideration has failed, or the contract has not been complied with. The court said, however, that if the vendee means to insist on the proper time, he should, immediately when the time has elapsed, insist on the repayment of his money, and offer to surrender the possession; but, very different was the course taken in that case.

It is worthy of notice, in all these cases, that the contracts were by articles of agreement: that the one instrument showed the entire contract—it was alike the evidence of both; and afforded all the indemnity provided for either.—That in neither of the cases, did the original contract place the vendee in possession of a separate bond, with or without security, for the titles; nor, of a deed, with the covenants of indemnity; nor did they place the vendor in possession of any negotiable or assignable security for the consideration money, or other evidence of it—except the articles, themselves, which also exhibited on their face, his concurrent obligation to perform.

Besides, in the cases referred to, the courts have laid stress on the fact, that the *same instrument showed on its face*, the dependence of one stipulation on the other, as the inducement or consideration. They have made but slight allusions to contracts of the different nature, such as these; and, so far, and so far as they have, they intimate the difference, in the legal effect, as respects the dependence, or independence of the covenants or liabilities.

Several authorities have, also, been cited, on the part of the defendant in error, with a view to sustain the decision of the court below. Among others, [a]6 Bin. 159 the case of *Obermyer* vs. *Nichols.*[a] Nichols brought an action of covenant, charging as a breach, the non-payment of rent. The ground of action was articles of an agreement, by which Nichols leased to Obermyer, a grist-mill, dwelling house, &c. for four years in consideration of an annual rent, which Obermyer covenanted to pay. Nichols, by the same articles, covenanted to build an addition to the dwelling house, and to make other improvements on the premises, between the 13th March, when the articles were executed, and the July following. The possession was delivered, according to the agreement, in April, of the same year, to Obermyer, who continued to use and occupy the same. The Supreme court held, it was not necessary, the plaintiff should have averred or proved the performance of the covenant, to build and improve, on his part. They sustained the charge given to the jury, by the court below—"that the defendant having enjoyed the mill and premises, all the other covenants, on the part of the plaintiff, were minor and subordinate, and not going to the essence of the contract, nor to the whole of the consideration, so as to defeat the rent, in *toto* "—that, if any of them were not performed, the jury might allow a discount, in proportion to the failure, out of the rent, that would otherwise have been due.

It would appear, from this examination of that case, that the intention of the parties, that the covenants or stipulations should be mutual and independent, was not so evident as in this.

The rules and directions laid down by *Chitty*, in his treatise on pleading,[a] by which to determine the character of covenants, whether dependent, or independent, refer mainly to the intention of the parties, indicated by the instrument, as those that must govern the construction. His fifth rule appears most favorable to the positions assumed by the plaintiff in error. It is there said, that "where two acts are to be done at the *same time*---as, where A covenants, or agrees to convey an estate, or to deliver goods to B, on a named day, or generally; and, in consideration thereof, B covenants to pay a sum of money, on the same day, or generally---neither can maintain an action, without shewing performance of, or an offer to perform, or, at least a readiness to perform, on his part---though it is not certain, which of them was obliged to do the first act: and, this rule particularly applies to contracts of sale."

[a] 1 Ch. Pl, 313, 14.

But the language of his third rule is this, that "where the plaintiff's covenant, or stipulation, constituted only a part of the consideration of the defendant's contract, and the defendant has actually received a partial benefit, and the breach on the part of the plaintiff can be compensated in damages; an action may be maintained against the defendant, without averring performance on the part of the plaintiff."

Would not this rule attach sufficient importance to the prior possession, and continued enjoyment of the profits, to create the partial benefit, indicating the independence of the stipulations; especially when it is considered that the vendee has a bond with security for his indemnity, and that he gave his note for the purchase money, which may have passed into

other hands, long before any objection to the payment could have been suggested. It may also be seen that Chitty's rules, referred to, are intended to be applied more particularly, if not exclusively, to contracts in the form of articles of agreement, where the one instrument discloses the reciprocal obligations of the parties. This is the form of contract which the natural course of business has usually appropriated to conditional contracts, or dependent covenants. The form and manner of consummating this contract has been that which is most usual for the opposite purpose.

*4 Lit. 252

In the case of *Mason vs. Chambers*,[a] the court of Kentucky recognised as a sound general rule, "that where the contract is entire, and the performance of one side constitutes the whole consideration of the performance on the other, if one side is to perform a small part first, however small, it is evident that he meant to waive the security of retaining his own performance, and rest upon his action." They also said "it is better for a court of law to reject a defence, which would only tangle and embarrass, rather than settle the whole controversy, and leave to the *Chancellor* to redress the plaintiff in error, if he is in danger of getting no title, after he pays his money."—The facts of that case were different from these, but it is sufficient to say the action was articles of agreement for the sale and purchase of land, containing, as the court held, independent covenants; and was brought by the vendor for the consideration agreed on. In this case no resort to chancery is supposed necessary, as the bond and security, is presumed to afford adequate remedy at law. The case of *Young vs. Triplett*,[b] if we are to regard it as authority, fully

*5 Ib.247

sustains the positions assumed by the counsel for the defendant in error.   In that case there is nò imputation of fraud ; but the vendor of land sued for the purchase money before he had made title, or delivered possession, as contracted.   Judge *Mills*, in delivering the opinion of the Court, said, "in cases of executory contracts for land, where one party holds the notes for the purchase money, and the other a bond for the conveyance, this court has invariably refused to permit a failure of consideration to be pleaded by the purchaser to the notes for the purchase money;" because the purchaser has his counter contract, on which he can make the vendor liable, and the vendor would still remain liable, if the defence was allowed, as well as before; and therefore his liability was a sufficient consideration.   There, the defence was more plausible than here, inasmuch as that vendee had not received the possession or enjoyed any benefit from the contract.   But it is insisted in argument, that we should not regard that decision as a sound exposition of the law.   Whether the principles declared were applicable to the peculiar facts of that case or not, we think they may well be applied to the circumstances of this.[a]

As previously intimated, the defence insisted on, against this note, is peculiar.   It does not claim a rescission of the contract.   The vendee has received a partial benefit from the possession and profits of the land, and there has been no attempt to place the vendor in *statu quo;* not even an offer to return the premises.

Could this defence prevail, the defendant in error would stand in an awkward dilemma.   He will have sold a valuable tract of land, supposed to be worth

[a] C.onCon. 278; 2Kent Com370 '3

WADE *vs.* KILLOUGH.

$1875, been out of possession for four or five years, given bond and security for the title, taken a note for the purchase money, has sued on the note and failed of a recovery, in a trial on the merits. At the same time his title bond is out, there is no imputation of fraud or insufficiency of his security, nor any legal means of regaining the possession and use of his property. Such a defence is disallowed by the principles of decision in all the cases referred to; and several previous decisions of this court.

It is considered unnecessary to examine separately, the objections as to the failure of the consideration of the note. It was urged only as a consequence of the non-performance of the alleged *condition precedent* —there was no averment in the plea, or evidence offered on the trial, of loss or injury, constituting a partial failure of consideration, from the delay in making titles. Under our opinion, as expressed, that the stipulations are mutual and independent; this objection falls of course.

I have also declined taking any special notice of the tender of the deed, after the suit was brought, or the alleged incapacity of one of the proprietors of the land, and his wife, to convey or relinquish their interest in due time, or of the legality of their transfers since. The offer of title is not now insisted on in support of the right to recover, and is not conceived to affect the merits of the controversy.

From a view of all the facts, the court are unanimous in affirming the judgment.