OBERMYER *against* NICHOLS.

IN ERROR.

1813.

*Chambersburg,*
*Monday,*
*October* 4.

THIS was an action of covenant in the Common Pleas of *Franklin* county, by *Nichols* against *Obermyer*. The breach laid in the declaration was the non-payment of rent; and the defendant pleaded *non infregit conventionem*, with leave to give the special matter in evidence.

On the trial of the cause, the plaintiff gave in evidence certain articles of agreement under seal between him and the defendant, dated the 13th of *March* 1807, of the following import:

By these articles, *Nichols*, in consideration of the rents and covenants to be paid and performed by *Obermyer*, leased to him a certain grist mill, dwelling house, and stabling, in *Franklin* county, for the term of four years from the date. *Obermyer* was also to have certain privileges of fuel, pasture, meadow and fruit trees, and possession was to be delivered on the 1st *April* 1807. *Nichols* on his part covenanted to build an addition to the dwelling house of certain dimensions, and of a good quality, to furnish boards for making a counter and shelves in the store-house, which *Obermyer* was to make according to his pleasure, and the house was to be done between the date of the lease, and the first of *July* thereafter. *Nichols* covenanted also to make a husk floor to the mill, and certain other improvements, which were to be completed on or before the 1st of *September* 1807; *Obermyer* to board the workmen, to be allowed a dollar a week for the board, and to pay *Nichols* 15 dollars when the store-house should be completed. In consideration of the premises, *Obermyer* covenanted to pay the annual rent of 175*l.* during the term, with a *proviso* that he should be at liberty to quit the premises before the expiration of the term upon giving lawful notice; to grind two tons of plaster annually for *Nichols*, and to keep the mill in good repair at his own expense.

Where a covenant goes only to part of the consideration on both sides, and a breach may be compensated by damages, it is an independent covenant, and an action may be maintained against the defendant for a breach of his covenant, without averring performance: Therefore, where *A* by articles of agreement leased a mill &c. to *B*, for four years, in consideration of an annual rent which *B* covenanted to pay, and *A* by the same articles covenanted to build a house of particular dimensions and quality, adjoining the mill-house, before a certain day after the commencement of the lease, and to make certain improvements in the mill; and the defendant entered and used the mill &c. Held, that in an action upon the covenant to pay the rent, it was not necessary to aver or prove performance of the covenant to build, and improve; and that if the landlord omitted to perform the covenants according to their meaning, the jury might deduct an equivalent from the rent.

*Rent* carries interest from the time it is due, unless from the conduct of the landlord it may be inferred that he means not to insist on it, *or* unless he acts in an oppressive manner by demanding more than is due, where the tenant is willing to do justice, *or* there are other equitable circumstances making the charge of interest improper.

The plaintiff further gave in evidence, that the defendant entered into possession of the premises on the 1st of *April* 1807, and remained there till the 1st of *April* 1808; and that the plaintiff built an additional house before the 1st of *July* 1807.

The defendant gave in evidence, that the plaintiff did not on or before the 1st of *September* 1807, make the improvements in the mill; and that the house built was not as good as the articles called for, and that he was not able to use it as beneficially as he would have done, if of the quality contracted for.

The plaintiff then shewed, that the defendant in the summer of 1807, had declared his intention to stay no longer on the premises; and that the improvements which *Nichols* was to make in the mill, were not essential to the well going of the mill.

Whereupon the Court charged the jury, " that the defen- " dant having enjoyed the mill and premises, all the other " covenants on the part of the plaintiff were minor and su- " bordinate, and not going to the essence of the contract, " nor to the whole of the consideration, so as to defeat the " rent in toto;—that in case they or any of them were not " performed by the plaintiff, the jury were at liberty to " defalk in damages from the rent payable to the plaintiff, " whatever they might think just and conscientious, in like " manner as if the defendant had brought an action against " the plaintiff; and the defendant was to have the benefit of " the aggregate of damages on the different breaches alleged, " as the same might have been given if such action had " been then trying before the jury. Interest might be given " from the time the rent was payable, on the balance, if " any, which the jury might find payable to the plaintiff." The defendant excepted to the charge. Verdict for the plaintiff 422 dollars damages.

The cause was argued in this Court, at the last term, when

*J Riddle* and *Duncan* for the plaintiff in error, contended that the charge was erroneous, 1. In saying that the covenant to repair was not essential to the contract, which should have been left to the jury. 2. In saying that interest

was recoverable upon rent. They cited *Bantleon* v. *Smith* (*a*), *Cook* v. *Wise* (*b*), 1 *Saund.* 320, *note a.*

*M'Cullough* argued for the defendant in error, in support of the charge, and cited 6 *Bac. Abr.* 631., *Trial A.*; 1 *Saund.* 320., *note b. c.*; 1 *Tidd Pr.* 384.; *Crawford* v. *Willing* (*c*), *Albright* v. *Pickle* (*d*), *Kennon* v. *Dickens* (*e*), *Greenleaf* v. *Kellogg* (*f*), *Chute* v. *Robinson* (*g*), *Clark* v. *Barlow* (*h*), and *The Delaware Ins. Co.* v. *Delaunay* (*i*).

*Cur. adv. vult.*

This day the judges delivered their opinions *seriatim*.

TILGHMAN C. J. This cause comes before us on a bill of exceptions, to the charge of the President of the Court of Common Pleas of *Franklin* county.

Two exceptions are taken to this charge: 1. That the Court ought to have left it to the jury to decide, whether the matters not performed by the plaintiff were so essential, that the non-performance of them bars his recovery. 2. That the jury ought not to have been left at liberty to give interest on the rent.

1. The construction of writings is the province of the Court. It was therefore for the Court to decide, whether the covenants to be performed by the plaintiff, were of such a nature, that without the performance of them, there was no obligation to pay the rent or any part of it. And it appears to me that the decision was right. Because the entry of the defendant was to precede the acts to be performed by the plaintiff, and it is evident that the defendant would enjoy a considerable benefit from the lease, independent of those acts. Perfect justice therefore was done to the defendant, when it was left to the jury to take into consideration the non-performance of the plaintiff's covenants, and to deduct from the rent, the amount of the injury which the defendant had sustained.

2. With regard to the interest on the rent, it is to be observed, that the jury were not directed to give it at all events, but they were left at liberty to give it or not as they

1813.

OBERMYER
*v.*
NICHOLS.

(*a*) 2 *Binn.* 154.
(*b*) 3 *Hen. & Mun.* 483.
(*c*) 4 *Dall.* 289.
(*d*) 1 *Smith's Laws* 381.
(*e*) *Taylor's N. C. Rep.* 236.
(*f*) 2 *Mass.* 568.
(*g*) 2 *Johns.* 595.
(*h*) 4 *Johns.* 183.
(*i*) 3 *Binn.* 295.

1813.

Obermyer
v.
Nichols.

might think proper. The expressions of the judge are, interest *may* be given. It is also to be observed, that a court and jury in *Pennsylvania*, stand in the place both of a court of common law and a court of equity in *England*. On the subject of interest, we have departed widely from the path of the *English* courts. We allow interest upon open accounts, where by the usual course of dealing, or by express agreement, a certain time is fixed for payment, and generally in all cases, where one person detains the money of another unjustly and against his will; and we consider it as a compensation for the damage sustained by the plaintiff in consequence of the defendant's breach of contract. But it is not allowed as matter of strict legal right, as in bonds with a penalty conditioned for the payment of a certain sum on a certain day, where in case of non-payment at the day, interest from that time runs of course. In many instances a balance may be due to the plaintiff, and yet it may appear that he has acted so unreasonably, by insisting on more than was due, and driving the defendant to the expense of a suit, as may well justify the jury in refusing any allowance for interest. So it may appear from the conduct of the plaintiff, that he gave the defendant reason to suppose that interest was not expected, and this conduct may have induced the defendant to delay the payment of the principal. Upon this last ground, I apprehend the non-payment of interest on quit rents due to the late proprietaries has been sustained; and because interest was not paid to them, it has been inferred without sufficient consideration, that none should be paid to individuals who were in very different circumstances. I am led to this opinion by the case of *Buchanan executor of Smith* v. *Montgomery*, at *Nisi Prius* in *Cumberland county*, *April* 1796. It was then given in charge to the jury by Chief Justice *Shippen*, that " the " practice of the late proprietaries in collecting their quit " rents, had generally established the usage in *Pennsylva-* " *nia*, that interest was not demandable on rent charges, or " other rents, though reserved by deed; and unless unwar- " rantable and vexatious delay had occurred in withholding " rents, interest was not properly recoverable." Taking the law as here laid down, it would be for the jury to judge whether an unwarrantable delay had taken place; and it

seems to me that where it is known to the tenant that the landlord wishes to receive his rent, the delay of payment is always unwarrantable. *A demand of payment on the premises* would put the matter out of doubt, and it would be prudent in landlords always to take this step. The principal argument against interest is, that the landlord has power to distrain, and by not exercising this power, he shews that he is willing to give time for payment. I am by no means satisfied with this reason. It is an abuse of the landlord's benevolence. It should rather be presumed that he is willing to spare the tenant the expense and injury arising from a distress, without relinquishing his claim to a reasonable compensation for the delay of payment. There is no more reason for saying that *not distraining* is evidence of an intent to relinquish interest on *rent*, than that the not bringing of an action is evidence of an intent to relinquish it in *other cases.* That interest upon a rent charge is considered as *equitable* even in *England*, appears by the opinion of Lord *Talbot* in *the Countess of Ferrers' case (Cas. Temp. Talb.* 2.) " The arrears of an annuity or rent charge, says " he, are never decreed to be paid *with interest*, but where " the sum is certain and fixed; and also where there is either " a clause of entry, or *nomine pœnæ*, or some penalty upon " the grantor which he must undergo if the grantee sued at " law, and which would oblige him to come into this Court " for relief, which the Court will not grant *but upon equal* " *terms, and those can be no other than to pay the arrears* " *with interest for the time during which the payment was* " *withheld.*" Now the clause of entry, or *nomine pœnæ*, makes no difference in point of equity, it only serves to give jurisdiction to the Court of Chancery; and when the parties are before the Court, and the tenant asks to be relieved from the penalty, the Chancellor considers and decrees according to the *real equity of the case.* In the *United States* different opinions have been entertained on this subject. In *Virginia* interest is not allowed, *Cook* v. *Wise,* 3 *Hen. & Munf.* 483., but the Court were divided, two judges against one. In *New-York* interest is allowed. *Clark* v. *Barlow,* 4 *Johns.* 183. In *Pennsylvania* the point has never been decided *in this Court.* At *Nisi Prius* it seems to have been held in two or three cases, that interest should

be allowed from the time of the action brought, or of distress made. Upon the whole, there is nothing in the way of our now deciding it upon what shall appear to be the true principle. It would be most extraordinary indeed, if we should allow interest upon an account for goods sold and delivered, where by the custom of the place credit was understood to be given to a certain day, and deny it on *rent*, where by the express agreement of the parties the day of payment was fixed. I therefore think that rent should carry interest, unless from the conduct of the landlord it might be infered that he meant not to insist on it, or unless he acted in an oppressive manner by demanding more than was due, where the tenant was willing to do justice. There may be other equitable circumstances making the charge of interest improper, all of which it would be difficult to enumerate. In the present instance I am of opinion, that the consideration of interest was properly left to the jury, and therefore the judgment should be affirmed.

YEATES J. I entirely agree with the charge of the Court below, that the defendant in that suit having enjoyed the mill and premises demised, the covenants on the part of the landlord were minor and subordinate, and did not go to the essence of the contract so as to defeat the rent *in toto*, in case they were not performed; but that the jury were at liberty to defalk in damages from the rent, whatever they might think just and conscientious for the repairs neglected to have been made. Where a covenant goes only to part of the consideration on both sides, and a breach of such covenant may be paid for in damages, it is an independent covenant; and an action may be maintained for a breach of the covenant on the part of the defendant, without averring performance in the declaration. 1 *Saund.* 320, *Williams's note.* Every man's feelings would revolt at the doctrine, that a tenant should be suffered to receive the profits of a valuable mill and tract of land for a whole year, without making any compensation therefor to the owner, on the ground that he did not make some trifling repairs according to his contract. All that he could in common honesty require in such a case, would be, to be allowed such a sum out of the rent, as would be full amends for the loss and inconvenience he had

been subjected to by the want of such repairs, but not to be discharged absolutely from all liability to his landlord. The jury were here instructed that the defendant below was entitled to the aggregate of damages on the different breaches alleged by him, as the same would be given, if the defendant had brought the suit against the plaintiff below; and it will be found on calculation that the jurors have made a liberal allowance therefor, which they have deducted from the rent. In this I can see no error.

It would seem from the cases in the *English* books, that interest is not allowable in debt for rent, 2 *Ld. Raym.* 774., *Comb.* 243., 2 *Fonbl.* 428., 2 *Dall.* 105, *notis*, nor on the arrears of annuities, unless under particular circumstances. 1 *Scho. & Lef.* 303., 4 *Bro. Cha. Rep.* 316. The Courts of our sister states differ in their decisions as to rent carrying interest. In the Supreme Court of Appeals in *Virginia*, it has been adjudged that a landlord was not entitled to interest on the arrearages of rent. 3 *Hen. & Munf.* 468. 500. See 2 *Call* 249. 253. But it has been determined in the Supreme Court of *New York*, that in an action of covenant brought to recover a sum certain, and payable in money, the landlord is entitled to recover interest. 4 *Johns.* 183. The question in this state has been declared by us fully open to discussion. 2 *Binn.* 154. It is well known to every one conversant with our practice, that we have not adopted all the *British* decisions on the subject of interest. In a variety of cases I cannot reconcile my ideas of distributive justice with those authorities. It has been truly said, 1 *Campb.* 53. *note*, that it would fortunately be a very difficult matter to fix upon another point of *English* law, besides interest, in which the authorities are so little in harmony with each other. In *England* the net sum only is recoverable without interest, in an action for money had and received; 2 *Burr.* 1005., 1 *Bos. & Pul.* 307.; even though there be fraud in obtaining it. 1 *Campb.* 129., 2 *Campb.* 426. The contrary has been repeatedly held in this state, and also in *New York.* 3 *Caines* 266. Where goods have been sold on credit, no interest is recoverable in the *English* Courts, because it has been said, that the sum is not liquidated until the jury find the value. 2 *Bla. Rep.* 761., 3 *Wils.* 206., 1 *Barnes* 151. This doctrine has been often overruled in our Courts. 4 *Dall.* 289, *note.* So also

we have differed as to allowing interest in *assumpsit* for work and labour, 1 *H. Bl.* 305., 1 *Campb.* 50.; and where money has been lent without note. 2 *Stra.* 910. In an action upon a policy of insurance, the assured in *Westminster Hall* cannot recover interest, upon the ground of its not being payable at a certain day. 1 *Campb.* 518. The opinion of Justice *Buller*, that interest might be recovered in such a case, has been disapproved of in those Courts. *Ib.* 51. And *Le Blanc* Justice has said, that the debt being liquidated, was not now the rule by which interest was recoverable. 2 *Campb.* 427. Our uniform practice is adverse hereto, and therewith agrees the practice in *New York.* 1 *Johns.* 315. Other instances might be cited if necessary, to shew that we do not adhere to the *English* course of decision, upon the subject of interest.

Amid this collision of sentiment, we are now called upon to give our opinions on an unsettled question of great magnitude, agreeably to our sense of right and justice, corresponding to our local situation, without usurping the office of legislation. The quit rents reserved on the grants of the late proprietaries have been thought to give a tone formerly to the public mind amongst us, upon this subject; but this difficulty has ceased by their abolition, and we are no longer in trammels on that score.

It is objected that a landlord is not entitled to interest upon his arrears of rent, because he might have distrained; and should not be permitted to lie by, and let the interest accumulate. The objection is more specious than solid. Admit that he may make distress, highly injurious to his tenant, cannot the latter bring his replevin, and delay the recovery? And cannot a creditor bring suit on his bond or other instrument or contract carrying interest? On failure whereof when the money becomes due, is he restricted from recovering his interest, though his suit be commenced years afterwards? The cases then are precisely the same in truth, and do not afford a rational ground of distinction.

The advantages arising from the use of money are well understood. Whoever withholds money justly due to another, is guilty of an immoral act, and ought to make full compensation. Interest is the usual measure of damages in such a case, and my mind cannot be satisfied that a debt

has been fairly discharged, where only half justice has been done. I will not use the strong expressions, that in all cases interest follows the principal as the shadow does the substance, 1 *Vez.* 310.; but I fully adopt the principle laid down in the Court of King's Bench in *Robinson* v. *Bland, adm'r. of Bland,* 2 *Burr.* 1086, (*see* 1 *Vez.* jr. 426., 3 *Vez.* jr. 135., 14 *Vin.* 448.,) that where money is made payable by an agreement between parties, and a time given for the payment of it, this is a contract to pay the money at the given time, and to pay interest for it from the given day in case of failure of payment at that day. The rule is bottomed on the immutable principles of justice, easily capable of application in every instance, and peculiarly fitted to our local circumstances, where the value of property is daily rising with great rapidity.

The present case falls clearly within the rule laid down. The certain sum of 175*l.* was stipulated by a solemn deed to be paid on a given day, viz. the 1st of *April* 1808, for one year's rent of the premises; and the tenant not having complied with his engagement, I am clearly of opinion that he ought to pay interest for his breach of covenant, and therefore that the judgment of the Court of Common Pleas of *Franklin* county should be affirmed.

BRACKENRIDGE J. Forfeiture of the feud was originally the penalty on not performing the services, in other words, the *non payment of the rents.* The distress of goods and chattels on the land substituted, became a pledge, and was held to compel payment. No question of *interest* could arise in such a case, for the remedies were effectual or considered such, to compel instantly a fulfilment of the condition of the tenure. The *replevin* lay at common law, which on the application of the tenant to chancery he could obtain, when for any reason he contested the lord's right of taking the distress. But to make the remedy more expeditious both for the sake of the tenant and the lord, by the statute of *Marlbridge c.* 21., the remedy was given by plaint to the sheriff, who in his county court could determine without delay; and hence it was that no question of interest could arise, in the nature of damages for the detention of the debt, because it was presumed, having these means of recovery,

1813.
OBERMYER
v.
NICHOLS.

the distress being in the nature of a *festinum remedium*, there could be no delay.

By the statute of *Westminster* 2. c. 2., it was further provided, that the tenant should on his taking a replevin give pledges to the sheriff to return the distress forthwith, if the plea on the replevin should be determined against him. This was a further security that no delay should be given, and left no room in contemplation of law for a demand of damages for the detention of the rent. But the pledges were not cattle, for these could not be brought into court; but pledges in the nature of a surety to whom a *scire facias* could issue, which was a process to bring the surety into court. But by the condition of the bond into which this surety entered, (for one might be taken, and it might be by bond even of the tenant himself, the plaintiff in replevin, the bond being only for the return of the distress,) the condition could not carry damages beyond the value of the distress itself, or compel any thing more than compliance with the writ *de retorno habendo*, when judgment on the replevin had been against the tenant. It may be seen therefore from the history of the claim of rent, how it happened that we hear nothing of damages, or interest which is in the nature of that claim. Pledges at common law were only to answer in an amercement to the king, *pro falso clamore;* and when by the statute a bond came to be given, it does not seem to have been used for any purpose but that of *procuring a return*. But for the greater security of persons distraining for rent, it is provided by statute 11 *Geo.* 2. *c.* 19., that a bond and two sureties shall be taken in double the value of the goods distrained, which bond may be assigned, " and the avowant may bring an action " in his own name, and the court may by rule give such relief " to the parties upon such bond as may be agreeable to jus-" tice." Would the court grant relief in such cases from the penalty of bonds, but on the tenant doing equity, and paying interest for the time the lord was delayed of his rent, and this in lieu of the amercement originally to the king? If the courts of law in *England* have not done this, it is what they would seem to have had the power to do. For though it is the province of chancery to relieve from penalties, yet in this case it is given to the courts in which replevins are triable, and in which the bond may be sued.

A number of years before this period, 21st *March* 1722, answering to 9 *Geo.* 1., an improvement of the law in this particular had been made by this then colony, and from which this 11 *Geo.* 2. *c.* 19. has been in a great measure taken, and contains the provision *totidem verbis*, that " the " Court by a rule may give such relief to the parties, as may " be agreeable to justice and reason." But in a note to *Smith's Laws, vol.* 1. 381. it is said, " not to be the usage " in this state, to allow interest on rent; but from the time " the landlord distrains or sues for it, it is customary for the " jury to make such allowance. The practice is right and " proper in itself. Where one unreasonably and vexatiously " delays another from the recovery of his just debt, the least " compensation he can make, is to pay interest for the delay " he has thus given." For this he cites manuscript reports. Independent of the remedy by distress, an action of debt lay at the common law, when the rent was reserved on a lease for years; " why not for rent during the continuance of the lease, " on freehold leases, the reason is not clear." It has been accounted for by suggesting that " the remedies by *cessavit* " and distress were sufficient." *Co. Litt.* 47 *a. Hargrave's note* 4.

By the 8th *Anne*, the action of debt is given during the continuance of an estate for life or years. Why that statute was not reported by us to the legislature as introduced here, I do not recollect. It would seem to me that it had been in usage to bring the action of debt in such cases, and whether this by force of that statute introduced, or by the action at common law *extended* to such cases by our own usage, I do not know, nor is it material to my purpose for the present investigation. I had taken it that an action of debt for rent might have been brought in any case. Why such action was never brought except under a *written lease*, might be owing to the right of the tenant to wage his law, which still remains a principle of our jurisprudence, and the technical subtlety of being bound to prove the exact sum due, &c. The proceeding for rent, has been usually by an action on the case declaring in assumpsit on a parol lease, or debt on the penalty, or in covenant on a writing under seal. Has it ever been heard of, that in debt on a penalty the defendant would be let off, without including interest on the rent due, by the order of

1813.

OBERMYER
v.
NICHOLS.

the Court? Has it ever been known that in covenant the jury would not include, and be directed by the Court to include, interest by way of damages, unless special circumstances took the case out of the justice of such finding? In assumpsit on a parol demise, the same. Were it otherwise, it would not be pursuing the equity which the act of 21st *March* 1772 gives under a proceeding by distress, when the tenant ultimately appearing in fault, the Court will relieve on the replevin bond, only by his doing that which to right and justice shall appertain. Distraining is a harsh remedy, and except in towns and cities it is little resorted to, and this may be a reason why it should be the usage to allow interest; for where a harsh but instant remedy is waived in favour of the tenant, equity would say there is the greater reason to allow interest. In *England*, equity will decree interest upon arrears of an annuity or rent charge, where there is either a clause of entry or *nomine pœnæ*, or some penalty upon the grantor which he must undergo if the grantee sued at law; but not for the rents and profits of an estate where the sum is uncertain. *Cases Temp. Talbot* 2. Interest in all cases must be at the *discretion of courts and juries*, except where a general rule can apply as in the case of a specific sum due. The legal interest is assumed in these cases, as the *measure of damages* for the use of money, or the detention of a debt. The reason was absurd, which has been given somewhere, that *rent shall not carry interest*, because it is itself interest. It is in lieu of profits of land, and so is interest upon money in lieu of the presumed or stipulated profits of it. It was the nature of military or socage services, and the remedies for them, that precluded interest, or rendered the allowing it unnecessary at an early period; and it required length of time to accommodate new rules to *new circumstances*. All these reasons have long ceased, and in this country especially, why any distinction should be made as to rents from demands of any other nature, I do not perceive. Whether allowable in the case before us, as in all other cases, may depend upon the circumstances of it. There are exceptions to all general rules.

I shall apply myself to examine the question whether the judgment ought to stand or be reversed, on the ground of allowing interest, or for other reasons. It would seem to be

implied in the charge of the Court, that certain covenants on the part of the landlord might not have been performed by him; for it is left to the jury to say, whether or not they had been performed. But at the same time these covenants are stated to be *minor* and *subordinate*, and not going to the essence of the contract, nor to the whole of the consideration, so as to defeat the rent *in toto*, in case they or any of them were not performed by the landlord. It ought to have been left to the jury to say, as well, whether these were minor and subordinate, and not going to the essence of the contract, as whether they were or were not performed. The judge had no right to say that they were minor and subordinate, so as to exclude the jury from a consideration of this, which, by taking it upon himself to lay it down as a matter of law, as he would seem to have done, would exclude. But it is more material, what he has given in charge in regard of what respects *interest.* Who made the first default in this case? The landlord. Certain covenants, however minor and subordinate, he had not performed. What could his tenant do in this case? Could he know what to tender? That would be taking upon himself to estimate the deficiencies. Did the landlord offer to leave it *ad arbitrium boni viri* to estimate all deficiencies? As the phrase is in common parlance, did he offer to leave it to *men*, to say what should be deducted on this account? We hear nothing of this. The tenant was justifiable in waiting, until the landlord should establish a claim which he had rendered questionable as to the extent, by his own act. It was the default of the landlord, which rendered it necessary to have recourse to some tribunal private or public, of their own choosing or otherwise, to ascertain what in justice, if any thing, was due. All the consequences ought to fall upon him the landlord, and at least the lying out of his rent if any due, until that should be ascertained. Did the tenant, when called upon by a judicial tribunal, or otherwise, affect delay, or procrastinate by making use of the forms of the law to gain time. We hear nothing of this. I see therefore, no obligation on the tenant to pay until the balance was ascertained, and he could know what to tender or pay. Interest upon the balance from that time, and not from the time the rent was payable, ought, or could in equity have been

1813.

OBERMYER
*v.*
NICHOLS.

given by the jury. I say equity, because where the question of interest is not fixed by positive law, or general rule, or by the express stipulation of the parties, it is a matter of equitable consideration to grant it. It is recoverable at the discretion of the Court or jury.

Putting myself in the place of the tenant in this case, I cannot but feel his embarrassment in not knowing what to pay, or how to free himself from the debt. What could he do with the money in the mean time? Not knowing at what time he might be called upon by adversary process, to have it levied on him, could he use it? The more natural presumption is that he kept it by him. It is the presumption that he kept the whole rent lying by him the whole time ready to pay it, not knowing whether a Court and jury would allow him to defalcate any thing in lieu of the breaches of covenant on the part of the landlord. In this case it might be a question of some subtlety, whether in consequence the tenant might not have a right to turn the tables upon the landlord, and demand that interest be allowed him, the tenant, on the difference between the rent payable and the balance found. This on the set off. For it is the legal presumption, that he had the rent ready to be paid at every instant of the time, from that at which it was due; and nothing appears to negative this, unless a presumption which might arise from his being a man in such business as might require the use of money, and render it productive at a short time or a long. This is the case with bankers or merchants, or it may be with manufacturers of any kind; but not with a trembling tenant, upon whom a small rent coming unawares at the moment not provided for, might sweep away his small means, and break him up. For I lay it down as a general rule, that when it can be presumed that a man who withholds money, has made use of it in the mean time, it is natural justice that he allow for the use of it. I cannot presume this in the present case, nor am I to consider as passing for nothing, the trouble and expense this tenant has been put to in attending court, and employing counsel, so as not to be an equitable bar to a demand of interest.

It is the gist of the cause with me, that the landlord made the first default. As to the covenants not performed being minor and subordinate, these are indefinite terms. *De mi-*

*nimis non curat lex* is a maxim, and I would not put on spectacles, to look at breaches in matters unsubstantial and of no great amount one way or the other. But, whatever was substantial I would look at; and putting myself in the place of the tenant, I would consider what rendered this contract less profitable or less convenient than it ought to have been. It is of the utmost consequence in point of morals, that the contracting parties should be held to a strict performance, and from a landlord to a tenant especially. In the case of *Washington*, writing to an agent respecting tenants, who alleged the non performance of something which on the part of the agent ought to have been done, " do them "justice, said he, and give them heaped measures.". This was a golden saying, and worthy of a great mind. But it is not only the most honourable, but always the safest policy. No man can prosper in life without a disposition to do all that can be required of him in discharge of his obligations to men. Even with this disposition of mind or determination, a great error is looking all on one side, and the being blind of an eye, if I may use a figure, so as not to see with equal advantage what is on one side and what on the other. Some men are of this cast from an inordinate self-love and defect of judgment; but it is the policy of the law to correct their understanding and their vision, and teach them to be honest.

*Discite justitiam moniti, et non temnere divos.*

In *foro conscientiæ* there is no great difference between larceny, and defrauding of what is due; and what can we call it in a moral point of view, if any thing is to be done as a condition precedent in the nature of a contract, and it is not done. If it is in a matter at all substantial, I would strongly incline to defeat a recovery, or resist a claim on the part of the defaulter, altogether. In the present case I would have it left to the jury to say whether substantial, and if so, that the landlord should recover nothing. The yeomanry of the country are the proper judges of these things. A judge may be well skilled in law, as far as regards abstract principles; but as between landlord and tenant, in what shall be deemed substantial in putting the premises in repair in particulars specified, and whether these shall be considered substantial or of minor concern, I would give but very little

1813.

OBERMYER
v.
NICHOLS.

for his notion: Few judges have been tenants, more have been landlords, and this is not a matter I would leave to them; at least I would prefer upon this point a jury of the country. What though the tenant in this case had given notice, and expressed an intention of relinquishing the premises at the end of the term, the presumption is that it was in consequence of these defaults on the part of the landlord, and goes to prove him deficient in what he undertook to do. It is true, that the warmth of the heart is not always a guide to the judgment of the head, for indignation may be from a mistake of facts and the legal inference; but it would seem to me, that in this case the landlord might be satisfied in escaping damages, and losing the rent. At all events I would leave it to a jury to consider this under all circumstances, and it would not seem to me that in this case, it was put in point of the law to the jury, so much to the advantage of the tenant as it ought to have been. I am therefore inclined to reverse the judgment.

Judgment affirmed.